Constance GIBSON, individually
and as Next Friend of M.G.,
a Minor, Appellant

v.

GARLAND INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 05–11–00731–CV.

Court of Appeals of Texas,
Dallas.

Aug. 27, 2012.

Rehearing Overruled Oct. 3, 2012.

Carl D. Tillery, Tillery & Tillery, Dallas, TX, for Appellant.

Paul K. Pearce, Jr., Timothy A. Dunn, Matthews, Stein, Shiels, Pearce, Knott, Eden & Davis, Dallas, TX, for Appellee.

Before Justices MOSELEY, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice LANG–MIERS.

This is an appeal from the trial court's order granting appellee Garland Independent School District's plea to the jurisdiction and dismissing the claims filed by appellant Constance Gibson, individually and as next friend of her minor son, M., for want of jurisdiction. Gibson sued GISD for injuries M. allegedly sustained as he was exiting the rear door of a school bus during an emergency exit drill. We affirm the trial court's order.

### Factual and Procedural Background

On the morning of October 18, 2006,[1] the driver of a GISD school bus stopped in a

---

1. The trial court's docket sheet shows that   Gibson filed this lawsuit in 2007, GISD filed

shopping center parking lot to conduct an emergency exit drill. The driver turned off the bus engine and instructed the children that she was conducting an emergency exit drill and that they would be required to exit the bus through the rear door. Gibson alleged that the bus driver had never instructed M., a student at Rowlett High School, about how to exit through the rear door and that M. did not know how. Gibson alleged that the bus driver was outside the bus near the emergency exit. M. watched as other children exited and, when it was his turn, he exited the bus as the others had done. He sat down on the floor of the bus at the rear door and jumped to the ground. When he did so, he landed hard on the parking lot and felt pain in his left leg. Gibson alleged that M. broke his ankle.

Gibson sued GISD alleging negligence and gross negligence. In her original petition, Gibson alleged that GISD negligently used an emergency exit for drills or practice, negligently used the school bus for conducting emergency exit drills or practice, negligently trained personnel relating to the use of the school bus, and negligently conducted an emergency exit drill or practice.[2]

GISD filed a plea to the jurisdiction in which it asserted that Gibson had not alleged an operation or use of the school bus for which the bus driver would be personally liable. GISD argued that the bus was stopped and the engine was off and, as a result, the bus was not being operated or used at the time of M.'s alleged injury. It argued that the school bus provided no more than the setting where M. was allegedly injured. GISD also argued that the gist of Gibson's claims "appears to be that

the emergency exiting drill was conducted on a school bus," and it argued that the National Highway Traffic Safety Administration recommends that school districts conduct emergency exit drills at least once per semester.

After GISD filed its plea to the jurisdiction, Gibson amended her petition. She alleged that

- the bus driver failed "to use reasonable care to assist [M.] while he was attempting to exit";

- the bus driver "failed to do as a reasonable bus driver would do in the same or similar circumstances in assisting [M.] in exiting from the rear emergency exit door";

- "there were no assistants standing at the emergency exit to help [M.] exit from the bus ...";

- M. "exited off the back of the bus without assistance" and "landed and fell to the ground and felt immediate pain in his leg and knee";

- the bus driver required M. "to exit the school bus through the rear emergency exit of the school bus ... without the exiting assistance and supervision mandated by [GISD] for the purpose of ensuring the safe use of the rear emergency exit of the school bus by the students who were compelled to participate in the emergency exit or evacuation practice or drill ...";

- the bus driver stopped the bus on a hard asphalt or concrete parking lot and required the students to exit from the rear door of the bus;

---

2. the plea to the jurisdiction in September 2007, and the trial court ruled on GISD's plea to the jurisdiction in March 2011.

2. Gibson stated in oral argument that her claims for gross negligence and failure to train are subject to governmental immunity.

- the drop off from the floor of the bus at the emergency exit to the ground was several feet down;
- the intentional and mandated operation and use of the school bus on the asphalt or concrete surface for emergency evacuation practice actually caused the injury to M.; and
- the bus driver was negligent by situating the school bus on a hard asphalt or concrete surface and using the bus for mandatory and non-voluntary participation of students to practice emergency exiting or evacuating from the rear emergency exit of the bus without adequate safety precautions.

Simultaneously with filing the first amended petition, Gibson filed her response to GISD's plea to the jurisdiction. Gibson's response included allegations similar to those in her amended petition: the bus driver stopped the bus in a parking lot for the purpose of performing an emergency exit drill, the bus driver required the students to exit the bus through the rear door, there were no assistants at the rear door to assist M. in exiting, the drop off from the floor of the bus to the ground was several feet down, the parking lot was asphalt or concrete, and M. sustained a broken ankle as a result of the use and misuse of the bus for the emergency exit drill.

GISD responded to Gibson's new allegations by stating that her "factual contentions have not changed ... and that Plaintiff still contends that [M.] was injured while the District's bus was stopped and while the bus driver conducted an emergency evacuation drill." GISD argued that none of Gibson's allegations stated a claim within GISD's waiver of immunity.

The trial court granted GISD's plea to the jurisdiction and dismissed the plaintiff's claims for want of subject matter jurisdiction. The court stated that in making its ruling it considered GISD's plea to the jurisdiction, Gibson's response, and GISD's reply. It did not state the basis for its ruling.

In three issues on appeal, Gibson argues that the trial court erred by granting GISD's plea to the jurisdiction because (1) GISD did not have immunity from suit, (2) GISD's employee was negligent in the operation or use of the bus, and (3) GISD's employee would be personally liable to plaintiff according to Texas law. GISD argues in response that none of the purported acts of the bus driver involves the bus driver's use or operation of the bus. It argues that the crux of Gibson's claims is that the bus driver negligently supervised the students while they exited the bus during the emergency exit drill and that its immunity is not waived for negligent supervision claims.

### Governmental Immunity

■ Governmental immunity deprives a trial court of subject matter jurisdiction unless the state consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). It is undisputed that GISD is immune from suit in this case unless the Texas Tort Claims Act expressly waives immunity. Section 101.021 of the Tort Claims Act states:

■ A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the opera-

tion or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (West 2011). The Tort Claims Act excludes school districts from this waiver of immunity, however, "[e]xcept as to motor vehicles[.]" *Id.* § 101.051. Consequently, "a school district is not liable for a personal injury proximately caused by a negligent employee unless the injury 'arises from the operation or use of a motor-driven vehicle or motor-driven equipment.'" *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A).

■ Section 101.021 does not define "use" or "arises from." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. In interpreting the statute, the Supreme Court of Texas has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Whitley*, 104 S.W.3d at 542 (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989)). It also interpreted the phrase "arises from" to require a plaintiff to show a nexus between the operation or use of the motor-driven vehicle and the injuries. *LeLeaux*, 835 S.W.2d at 51. In other words, "the [vehicle]'s use must have actually caused the injury." *Whitley*, 104 S.W.3d at 542 (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex.2001)). Immunity is not waived when an injury occurs on a school bus but does not arise

out of the use or operation of the bus. *LeLeaux*, 835 S.W.2d at 51. The school bus must do more than merely "furnish the condition that makes the injury possible." *Whitley*, 104 S.W.3d at 542 (quoting *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998)).

### Standard of Review

■ We review a trial court's ruling on a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 225–26. A plaintiff has the burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *Id.* at 226. When the plea to the jurisdiction challenges the pleadings, we will construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent to determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *Id.* at 226–27. We may examine evidence offered by the parties to the extent necessary to resolve the jurisdictional inquiry. *Id.*

### Discussion

No one disputes that GISD is a governmental unit under the Tort Claims Act or that the bus driver was acting within the course and scope of her employment when she conducted the emergency exit drill. Our review, then, is limited to whether Gibson alleged a statutory waiver of immunity—that is, whether Gibson alleged M.'s injuries arose from the wrongful act or omission or negligence of the driver in operating or using the bus and the driver would be subject to personal liability under Texas law.

■ Gibson contends that she alleged an operation or use of the bus because the bus was an integral part of the emergency exit drill. GISD argues that Gibson did not allege an operation or use of the bus

because the bus was stopped and the engine was off.

■ Most of Gibson's allegations are that M. was injured because the bus driver failed to assist M. as he exited the bus during the emergency exit drill. As our sister court stated, "When a plaintiff's injuries arise from an employee's 'affirmative action' actually using or operating the bus, the school district's immunity has been waived. However, when the injuries arise from an employee's acts or omissions involving only supervision or control of children, immunity has not been waived even if the acts took place on or near the bus." *Breckenridge Indep. Sch. Dist. v. Valdez*, 211 S.W.3d 402, 408 (Tex.App.-Eastland 2006, no pet.) (citations omitted). Examples of claimed "affirmative action" by a bus driver include honking the horn, failure to use flashing lights, and stopping the vehicle in a manner that left a long step to the curb. *See Elgin Indep. Sch. Dist. v. R.N.*, 191 S.W.3d 263, 267–72 (Tex. App.-Austin 2006, no pet.) (analyzing cases in which vehicle was in use because driver took an affirmation action). On the other hand, injuries attributable to a bus driver's supervision or control of the students or whether and when students should disembark are considered supervisory in nature. *See id.* at 271–72; *Montoya v. Houston Indep. Sch. Dist.*, 177 S.W.3d 332, 336–37 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (injuries sustained when student fell through emergency exit resulted from failure to supervise and respond to student's behavior); *Goston v. Hutchison*, 853 S.W.2d 729, 733 (Tex.App.-Houston [1st Dist.] 1993, no writ) (allegation that students allowed to disembark at undesignated stop pursuant to their request and later injured by third party are supervisory in nature). Gibson's allegations that the bus driver failed to provide assistance to M. as he exited the bus do not allege that the bus driver took an affirmative action in the use or operation of the bus. In fact, Gibson asserted that the bus driver was not on the bus, was standing in the parking lot near the rear door of the bus, and did not help M. as he exited the bus.

■ Gibson's amended petition also alleged that the bus driver stopped the bus on a "hard asphalt or concrete" parking lot and that the drop from the bus to the parking lot was "several feet." Gibson asserted in oral argument that the bus driver was negligent by stopping the bus on a hard asphalt or concrete surface. GISD contends this issue was not presented to the trial court in Gibson's response to the plea to the jurisdiction and that Gibson did not present it as an issue for our review on appeal. But even assuming that Gibson's argument is not waived, we conclude that the allegation does not assert an "operation or use" of the bus. Rather, like the situations in *Bossley* and *Whitley*, the bus in this case merely "furnish[ed] the condition that ma[de] the injury possible." *See Whitley*, 104 S.W.3d at 542–43 (quoting *Bossley*, 968 S.W.2d at 343).

Here, the bus driver parked the bus on a parking lot, turned the engine off, and asked the children to exit through the rear door. After M. exited the door, he landed on the asphalt and allegedly hurt his leg. Gibson said the driver was not on the school bus when the incident occurred. Based on these facts, we conclude that the school bus was merely the setting for the injury. *See id.; cf. Dallas Area Rapid Transit v. Willis*, 163 S.W.3d 814, 817 (Tex.App.-Dallas 2005, pet. denied) (finding a "use or operation" of bus where plaintiff was injured when bus driver was on bus, was transporting passengers, stopped at a bus stop on its route and left a "long step" down to the ground). Consequently, we conclude that Gibson has not

alleged a waiver of governmental immunity.

We resolve appellant's issues against her.

## Conclusion

We affirm the trial court's order.

MURPHY, J., dissenting.

Dissenting Opinion by Justice MURPHY.

We are required to construe Constance Gibson's pleadings liberally in her favor in our de novo review of whether she has alleged facts that affirmatively demonstrate the trial court's jurisdiction of her claims against the Garland Independent School District. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). She alleges the following:

> The intentional and mandated operation and use of the [GISD's] school bus on the asphalt or concrete surface for emergency evacuation practice actually caused the injury to [M.]. [GISD] and their agent, servant or employee [–] were negligent in operating, using, and misusing the [GISD] school bus, which was the tangible property of the [GISD], by situating the [GISD] school bus upon hard asphalt or concrete surface and using and misusing the [GISD] school bus for the mandatory and non-voluntary participation of students to practice emergency exiting or evacuating from the rear emergency exit of the school bus without adequate, reasonable, and prudent safety precautions for the safety and protection of the students who were required to participate in the use of the [GISD] school bus for evacuation practice. [M.'s] injuries were directly caused by his mandatory, non-voluntary, required use of the [GISD] school bus for evacuation practice.

Gibson alleged further that GISD "negligently used tangible school property (i.e. the school bus) for the purpose of conducting emergency exit drills or practice" and "negligently conducted an emergency exit drill or practice through the use of the school bus."

While I agree with the majority that allegations of an employee's acts or omissions involving only supervision or control of children do not waive immunity, I disagree that allegations of "situating the [GISD] school bus upon hard asphalt or concrete surface" and requiring students to evacuate through the emergency exit onto that surface do "not assert an 'operation or use' of the bus." These allegations suggest more than "merely the setting for the injury." As this Court previously reasoned, the "fact that the bus was stationary is not determinative of whether it was being used or operated." *Dallas Area Rapid Transit v. Willis,* 163 S.W.3d 814, 817 (Tex.App.-Dallas 2005, pet. denied). We concluded in *Willis* that the pleading was sufficient to state a waiver of immunity under the Texas Tort Claims Act where the pleader alleged that "the bus driver took the affirmative action of parking the bus in a way that may have contributed to her accident, and his action serves as the basis for her liability claim against DART." *Id.* In *Willis,* a passenger fell and injured herself while attempting to exit the bus that the driver allegedly failed to stop close enough to the curb. *Id.* at 816. Construing Gibson's pleading liberally in her favor, I would conclude she has pleaded a waiver of immunity as to use of the school bus pursuant to this Court's reasoning and holding in *Willis.* I therefore respectfully dissent from that part of the majority's decision.